LIAN v. HENRY BRADFORD & CO.

1. ESTOPPEL—AMENDMENTS—DECLARATION.
    Where plaintiffs' declaration contained two counts, one for
    fraud and deceit in the sale of land, and another based
    upon rescission of the contract, and on the trial defend-
    ants consented to the amending of same by striking out
    the count for rescission, they are estopped to allege error
    upon the allowance of said amendment.

2. NEW TRIAL—OVERWHELMING WEIGHT OF EVIDENCE.
    *Held*, that the verdict for plaintiffs was not against the
    overwhelming weight of the evidence.

3. FRAUD—MEASURE OF DAMAGES.
    In an action for fraud and deceit in the sale of land, the
    measure of damages is the difference between the value
    of the premises had they been as represented and what
    they were actually worth.

4. SAME—DAMAGES—EXCESSIVE VERDICT.
    In such action, where there was testimony that if the land
    had been as represented it would have been worth $2,000,
    a verdict for $1,500 cannot be said to be excessive.

Error to Newaygo; Barton (Joseph), J. Submitted
January 20, 1920. (Docket No. 35.) Decided Feb-
ruary 27, 1920.

Case by Carl L. Lian and another against Henry
Bradford & Company and another for fraud and de-
ceit in the sale of land. Judgment for plaintiffs. De-
fendants bring error. Affirmed.

*Cross, Foote & Sessions,* for appellants.
*William J. Branstrom,* for appellees.

CLARK, J. Plaintiffs, Carl L. Lian and Jensine Lian,
were husband and wife and lived in Chicago in 1910.
Mr. Lian was a laborer without experience in farming.
Henry Bradford, as Henry Bradford & Company of

Chicago, was a dealer in real estate, and defendant Jesse B. Bradford was his cashier, to whose office plaintiffs went to buy land. After some preliminaries a contract was made for 40 acres of land near Marl Lake, Newaygo county, as plaintiffs claim. The consideration of $1,000 plaintiffs were to pay in monthly installments. Later the defendant corporation was organized and seems to have succeeded to the business of Henry Bradford. Jesse B. Bradford continued in the service of the corporation. In May, 1915, plaintiffs having paid in installments a total of $800 and the taxes and having the balance due upon the contract of $217 tendered it to defendants and demanded a deed. Defendants had no land near Marl Lake and plaintiffs asked return of the money and were refused. Defendants offered other land and plaintiffs finally accepted a deed of 40 acres of land in Newaygo county near Hess Lake. Plaintiffs came out to this land and as they claim first saw it in April, 1918. This suit followed. The declaration in substance alleged that about May 10, 1915, defendants offered to sell plaintiffs 40 acres of land in Newaygo county, and to induce plaintiffs to purchase defendants represented that the land was within three miles of the village of Newaygo, was the best kind of farm land, would raise abundantly all crops, was good productive clay soil, well suited to fruit raising, and had on it valuable timber, and that the plaintiffs relying on the truth of such representations were induced to pay and did pay to defendants for the land the sum of $1,000, that the representations were false and fraudulent and made knowingly with intent to defraud, and that the land was absolutely worthless. The damages averred were $1,-000 paid defendants, the expense of moving from Chicago, and loss of earnings. The second count is substantially like the first except that it proceeds upon the theory of a rescission and tenders a reconveyance of the premises. We quote from plaintiffs' brief:

' "The original declaration in this case consists of two counts identical in description of the wrong sued upon. The first count is based on the affirmance of the contract, although paragraph nine thereof does not state the proper measure of damages in a case for fraud and deceit. The second count of the declaration is based on rescission of the contract and contains a paragraph whereby plaintiffs tender a reconveyance of the premises."

When the parties were in court ready for trial counsel for plaintiffs asked leave to amend the declaration as to both counts so that the averments respecting damages should read:

"That because of the said fraudulent representations made as aforesaid by the defendants, the plaintiffs were led to believe that the said premises so purchased by them were worth upwards of $2,000, where, in truth and in fact, the said premises were worthless, and to that extent they have been damaged in the sum of $2,000."

And—

"That the plaintiffs, because of the premises have been greatly injured and damaged to the extent of $2,000."

And also to amend by striking out the paragraph of the second count as to rescission and tender of reconveyance. The amendments were allowed. Whereupon the following:

"*Mr. Foote:* Now representing those two defendants. Your honor, I object to the application made here, to the motion made on the part of the plaintiffs' attorney to amend the declaration for the reason that it changes the whole theory of the plaintiffs' case.

"*The Court:* And therefore is a surprise?

"*Mr. Foote:* I will say that, yes; I don't want to say, however, that on account of being surprised that I am desiring to have the case continued, anything of that kind, I am not going to go that far.

"*The Court:* I must accept it as I see it, Mr. Foote,

and let me say that the court will allow the amendment as moved. Now that is up to you to proceed to trial or ask for such time as necessary to meet it.

"*Mr. Foote:* To meet this new claim?

"*The Court:* Yes.

"*Mr. Foote:* Well, your honor, I take the position that if this amendment is going to be allowed, that it is a surprise to me so far as the claim of the plaintiffs is concerned. I have gone upon the theory that the claim of the plaintiffs here was a rescission of this contract, and if they are going to change their theory, why, of course, I am surprised, and I am not ready to go on.

"*The Court:* Very well, how much of an adjournment do you want?

"*Mr. Foote:* Why, it should go over the term; I don't know why it shouldn't; that is the usual manner in those things. * * * The case ought to go over the term, it seems to me, that is what I ask at this time in behalf of the defendants.

"*The Court:* Do you say to me, Mr. Foote, that you couldn't safely proceed to trial in defense of this declaration as now stands before the next term of court. In other words, you couldn't prepare to meet it in your judgment?

"*Mr. Foote:* I would say so, your honor, and I will say so for Mr. Branstrom's benefit, upon this theory, that the value of the land becomes at issue now and therefore it will be necessary for us to have proof of the value of this land. * * * Do I understand then, if this case goes over, it will go over to the December term?

"*The Court:* Yes; I couldn't put it over longer than to the next term.

"*Mr. Foote:* At this time, your honor, you can't say whether there will be a jury here in December term or not?

"*The Court:* I can't say.

"*Mr. Foote:* It will all depend on the work?

"*The Court:* Yes.

"Jury takes short recess.

"*Mr. Foote:* I withdraw my objections and I offer an amendment to my plea.

"*The Court:* Which is allowed without objection."

And the following appears in the reasons for denying motion for new trial:

"The court avers that while all the parties were in court ready to go to trial, the plaintiffs made a motion to amend their declaration, which was allowed, and thereupon the court stated to the attorney for defendants, the case would be continued to meet their convenience so as to give them an opportunity to meet whatever new matter was presented by the amendment; that thereupon the defendants and their attorney left the court room and were gone for a period of about an hour, and when they returned they made the proposition to the attorney for the plaintiffs, that if the latter would make no objection to their amending their plea by adding thereto a notice of special defense, that they, the defendants, would withdraw their objection to the plaintiffs' amendment of the declaration and that they would not ask for a continuance, but would proceed to trial forthwith, and that with this understanding between the court and the counsel for the respective parties, had in open court, the parties proceeded to trial."

Counsel for plaintiffs in his opening statement said plaintiffs were not claiming a rescission but damages for fraud and deceit, and upon this theory the case went to trial without further objection. Plaintiffs had verdict and judgment for $1,500. Errors assigned by defendants and discussed are:

"(1) Plaintiffs having rescinded the contract, tendered a reconveyance, and brought suit to recover the purchase price of the land, thereby elected their remedy, and it was reversible error for the court to allow plaintiffs to amend their declaration and thereby change the nature of the plaintiffs' cause of action and the rule of damages applicable thereto.

"(2) Error in refusing to grant a new trial and in the reasons given therefor."

1. To determine whether there was merit (which we do not concede, see *Glover* v. *Radford*, 120 Mich. 542; *Humiston, Keeling & Co.* v. *Bridgman*, 195 Mich.

82; 9 R. C. L. p. 961) in defendants' objection to the allowance of the amendments would not be decisive, for defendants withdrew the objection, were permitted to amend their plea, and the trial proceeded upon the pleadings as amended without further objection or question respecting the subject under consideration. Defendants, therefore, are estopped to allege error upon the allowance of the amendments. *Linsell* v. *Linsell,* 138 Mich. 64.

2. It is here urged that the verdict was contrary to the great and overwhelming weight of the evidence and that it was grossly excessive.

The trial court said:

"The court finds as a matter of law and fact, that the verdict of the jury was not contrary to the great and overwhelming weight of the evidence, and there was sufficient proofs in the case to support the verdict of the jury, and the same is not against the just rights of the defendants * * * and that the verdict and judgment are not excessive in amount."

With these conclusions we are in accord. There was testimony that the land conveyed to plaintiffs was entirely worthless and without market value. One witness said: "I don't know of anything it is any earthly good for." There was also testimony that if the land had been of a quality, character and location agreeable to the representations which plaintiffs claimed were made to them by the defendants it would have been worth $2,000. The court correctly charged the jury that the measure of damage was the difference between the value of the premises had they been as represented and what they were actually worth.

No reversible error appearing, the judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.